MELINDA A. MORGAN [8392]
ANNE T. FREELAND [12096]
MICHAEL BEST & FRIEDRICH, LLP
6995 Union Park Center, Suite 100
Salt Lake City, UT 84047
Telephone:  (801) 833-0500
Facsimile:  (801) 931-2500
Email: mamorgan@michaelbest.com
          atfreeland@michaelbest.com

*Attorneys for Defendant Narciso Alejandro Rodriguez-Cayro*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| KYLI RODRIGUEZ-CAYRO, an individual,<br><br>        Plaintiff/Counterclaim-defendant,<br><br>v.<br><br>NARCISO ALEJANDRO RODRIGUEZ-CAYRO, an individual,<br><br>        Defendant/Counterclaim-plaintiff/<br>        Third-party plaintiff,<br><br>v.<br><br>MARNIE LYNN ANTONIK, an individual,<br><br>        Third-party Defendant. | **DEFENDANT NARCISO ALEJANDRO RODRIGUEZ-CAYRO'S ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIM, THIRD-PARTY COMPLAINT, AND JURY DEMAND**<br><br>Case No. 2:17-cv-01197-DB<br><br>Judge Dee Benson |

## ANSWER

Defendant Narciso Alejandro Rodriguez-Cayro ("Defendant"), by and through his undersigned counsel, hereby answers Plaintiff Kyli Rodriguez-Cayro's ("Plaintiff") First Amended Complaint as follows:

## PARTIES

1.      Defendant admits the allegations in paragraph 1 upon information and belief.

2.      Defendant admits the allegations in paragraph 2.

## JURISDICTION AND VENUE

3.      Defendant admits that the Third Judicial District Court for Salt Lake County, Utah had subject matter jurisdiction over the action when Plaintiff's First Amended Complaint was filed.

4.      Defendant denies that the Third Judicial District Court for Salt Lake County, Utah had personal jurisdiction over Defendant.

5.      Defendant denies that Venue was proper in the Third Judicial District Court for Salt Lake County, Utah.

6.      Defendant admits the allegations in paragraph 6.

7.      Defendant admits the allegations in paragraph 7.

8.      Defendant denies the allegations in paragraph 8.

9.      Defendant denies the allegations in paragraph 9.

10.      Defendant denies the allegations in paragraph 10.

11.      Defendant denies the allegations in paragraph 11.

12.      Defendant denies the allegations in paragraph 12.

13.      Defendant denies the allegations in paragraph 13.

14.      Defendant admits that Plaintiff attended a Residential Treatment Facility in Salt Lake County, Utah because of her eating disorder, propensity to harm herself and others, and her

at-risk behavior, including substance abuse; Defendant denies the remainder of the allegations in paragraph 14.

15.     Defendant is without sufficient information or knowledge to admit or deny the allegations in paragraph 15 and therefore denies the same.

16.     Defendant admits the allegations in paragraph 16.

17.     Defendant denies paragraph 17 as stated.  Defendant admits he travelled to Utah as required by the Agreement with Plaintiff's Residential Treatment Facility to participate in her therapy and later because Plaintiff underwent an emergency appendectomy.

18.     Defendant admits that, while he was present in the State of Utah, he was subject to the obligations of Utah law and subject to consequences of violating Utah law.  The remainder of the paragraph contains a legal conclusion and therefore no response is required.  To the extent a response is required, Defendant denies the remainder of the allegations.

19.     Defendant denies the allegations in paragraph 19.

20.     Defendant denies the allegations in paragraph 20.

21.     Defendant denies the allegations in paragraph 21.

22.     Defendant denies the allegations in paragraph 22.

23.     Defendant denies the allegations in paragraph 23.

24.     Defendant denies the allegations in paragraph 24.

25.     Defendant denies the allegations in paragraph 25.

26.     Defendant denies the allegations in paragraph 26.

27.     Defendant denies the allegations in paragraph 27.

28.     Defendant denies the allegations in paragraph 28.

29.     Defendant denies the allegations in paragraph 29.

30.     Defendant denies the allegations in paragraph 30.

31.     Defendant denies the allegations in paragraph 31.

32.     Defendant denies the allegations in paragraph 32.

33.     Defendant denies the allegations in paragraph 33.

34.     Defendant denies the allegations in paragraph 34.

35.     Defendant denies the allegations in paragraph 35.

36.     Defendant denies the allegations in paragraph 36.

37.     Defendant denies the allegations in paragraph 37.

38.     Defendant denies the allegations in paragraph 38.

39.     Defendant denies the allegations in paragraph 39.

40.     Defendant denies the allegations in paragraph 40.

41.     Defendant denies the allegations in paragraph 41.

## FIRST CAUSE OF ACTION
(Intentional Sexual Abuse of a Child)

42.     Defendant repeats and incorporates his responses to the above allegations.

43.     Defendant denies the allegations in paragraph 43.

44.     Defendant denies the allegations in paragraph 44.

45.     Defendant denies the allegations in paragraph 45.

46.     Defendant denies the allegations in paragraph 46.

47.     Defendant denies the allegations in paragraph 47.

48.     Defendant denies the allegations in paragraph 48.

49.     Defendant denies the allegations in paragraph 49.

## SECOND CAUSE OF ACTION
(Negligent Sexual Abuse of a Child)

50.     Defendant repeats and incorporates his responses to the above allegations.

51.     Defendant denies the allegations in paragraph 51.

52.     Defendant denies the allegations in paragraph 52.

53.     Defendant denies the allegations in paragraph 53.

## THIRD CAUSE OF ACTION
(Battery)

54.     Defendant repeats and incorporates his responses to the above allegations.

55.     Defendant denies the allegations in paragraph 55.

56.     Defendant denies the allegations in paragraph 56.

57.     Defendant denies the allegations in paragraph 57.

58.     Defendant denies the allegations in paragraph 58.

## FOURTH CAUSE OF ACTION
(Assault)

59.     Defendant repeats and incorporates his responses to the above allegations.

60.     Defendant denies the allegations in paragraph 60.

61.     Defendant denies the allegations in paragraph 61.

62.     Defendant denies the allegations in paragraph 62.

63.     Defendant denies the allegations in paragraph 63.

**FIFTH CAUSE OF ACTION**
(Negligent Infliction of Emotional Distress)

64.     Defendant repeats and incorporates his responses to the above allegations.

65.     Defendant denies the allegations in paragraph 65.

66.     Defendant denies the allegations in paragraph 66.

67.     Defendant denies the allegations in paragraph 67.

**SIXTH CAUSE OF ACTION**
(Intentional Infliction of Emotional Distress)

68.     Defendant repeats and incorporates his responses to the above allegations.

69.     Defendant denies the allegations in paragraph 69.

70.     Defendant denies the allegations in paragraph 70.

71.     Defendant denies the allegations in paragraph 71.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

In the event it is established that Plaintiff's damages, if any, were proximately caused by the acts or omissions of third persons or entities over whom and over which Defendant had no control or right of control, including Marnie Lynn Antonik, then Defendant may not be held liable for any such acts or omissions and would be entitled to an apportionment of fault as to such third persons or entities.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's injuries and damages may have been caused in whole or in part by Plaintiff's own negligence; and Defendant is entitled to a reduction of any award to Plaintiff, or a bar thereof, in accordance with such comparative fault.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred to the extent she has failed to mitigate her damages.

### FIFTH AFFIRMATIVE DEFENSE

Defendant may be held liable only for his own negligence or fault, if any, and not for any other acts, omissions, conditions, circumstances or events.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join an indispensable party, Marnie Lynn Antonik, and potentially other indispensable parties yet to be discovered who failed to report alleged abuse.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff alleges causes of action which do not exist in Utah, Pennsylvania, Florida, and New Hampshire:  the First Cause of Action for Intentional Sexual Abuse of a Child and the Second Cause of Action for Negligent Sexual Abuse of a Child.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action for Battery, Assault, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress are barred to the extent they were not timely filed within the statute of limitations.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to properly plead special damages in support of her claims for Battery, Assault, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress.

## TENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to raise additional defenses not known at this time but which may become known during the course of discovery, investigation or trial.

## REQUEST FOR RELIEF

Wherefore, Defendant Narciso Alejandro Rodriguez-Cayro requests the following relief:

A.     That the First Amended Complaint be dismissed with prejudice;

B.     That Plaintiff takes nothing by her First Amended Complaint; and

C.     For any other relief this Court deems reasonable and just, including that Defendant be awarded reasonable attorney fees as provided by statute or rule, and costs.

## <u>COUNTERCLAIM</u>

Pursuant to Fed. R. Civ. P. 13, Defendant/Counterclaim-plaintiff Narciso Alejandro Rodriguez-Cayro, by and through his undersigned counsel, hereby states the following Counterclaim against Plaintiff/Counterclaim-defendant Kyli Rodriguez-Cayro.

## PARTIES

1.     Defendant/Counterclaim-plaintiff Narciso Alejandro Rodriguez-Cayro ("Counterclaim-plaintiff") is a resident of the State of Pennsylvania.

2.     Plaintiff/Counterclaim-defendant Kyli Rodriguez-Cayro ("Counterclaim-

defendant") is, upon information and belief, a resident of the State of Utah.

## JURISDICTION AND VENUE

3.      Jurisdiction and venue in this Court are proper pursuant to 28 U.S.C. § 1332 and § 1441(a).

## GENERAL ALLEGATIONS

4.      Counterclaim-defendant is Counterclaim-plaintiff's first born child.

5.      In 1996, when Counterclaim-defendant was approximately one year old, Counterclaim-plaintiff began attending law school at night and in 2000, Counterclaim-plaintiff began practicing law and has practiced without interruption since.

6.      Counterclaim-defendant attended public elementary school in Pennsylvania.

7.      Counterclaim-plaintiff was a loving and devoted parent who was involved in Counterclaim-defendant's life.  Counterclaim-plaintiff coached Counterclaim-defendant's soccer team for six years and her basketball team for three years, and arranged for Counterclaim-defendant to attend inaugurations, participate in parades, meet government officials, and enjoy many other enriching and educational experiences.

8.      By the time Counterclaim-defendant was in 6th grade, she began to show signs of mental illness, depression, and aggression.  She was told by her soccer coaches at school that she needed to lose weight and she was the target of bullying at school.  She eventually began cutting herself and developed bulimia, an eating disorder.

9.      Counterclaim-plaintiff and his wife Marnie, Counterclaim-defendant's mother, were deeply concerned about Counterclaim-defendant and sent her to therapy, but it did not seem

to help.

10.     Around this time, Counterclaim-defendant had an argument with her mother and jumped from her mother's van while it was still moving.

11.     After this argument, Counterclaim-defendant told her parents that she had been raped by two teenage classmates at their home when her parents were not there—this was later revealed to be a fabrication.

12.     Counterclaim-plaintiff and his wife believed a change in geography and school district may help their daughter and so they subsequently moved to a new home in different school district.

13.     By the middle of her 9th grade year, Counterclaim-defendant began refusing to go to school and drinking alcohol, and she became increasingly volatile.

14.     Counterclaim-defendant became physically aggressive and, on one occasion, pushed her mother down the stairs and attacked her siblings.  Her mother called the police department to report the incident, but decided not to press charges.

15.     During this time period, when Counterclaim-plaintiff was on a visit to Florida, he received a call from Counterclaim-defendant advising him that she had told her mother that she got drunk and lost her virginity to an older teenager in the back of a van.

16.     During the middle or end of Counterclaim-defendant's freshmen year of high school, out of fear and concern that their daughter would commit suicide, further her eating disorder and/or otherwise reach a point from which recovery was not sustainable, Counterclaim-plaintiff and his wife sent Counterclaim-defendant to a Residential Treatment Facility in

Arizona, Rosewood Centers for Eating Disorders.

17.     During her time at Rosewood, Counterclaim-defendant was repeatedly reprimanded for her contact with male residents of the facility, which led to her being transferred to a Residential Treatment Center in Utah, La Europa Academy.

18.     During Counterclaim-defendant's time at La Europa Academy she confessed to her therapists, and subsequently to her parents, that she had previously lied about being raped by two classmates at their home, and further that she had stolen hundreds of dollars from her parents.  Counterclaim-defendant stated that she made up the allegation to manipulate and punish her parents.

19.     Counterclaim-plaintiff saw Counterclaim-defendant only twice in Utah.

20.     Once was when Counterclaim-plaintiff and his wife Marnie attended "Family Week" at La Europa Academy; during this visit, Counterclaim-defendant stayed with her mother and Counterclaim-plaintiff together at a hotel the Salt Lake City area.

21.     The other time was when Counterclaim-defendant was rushed to an emergency room for a burst appendix and Counterclaim-plaintiff visited her in the hospital.

22.     From La Europa Academy, Counterclaim-defendant was transferred to Sovereign Journey Residential Treatment Center in New Hampshire because staff at La Europa believed she had reached a plateau in her treatment and because she had commenced a sexual relationship with another resident, Danielle, in violation of their rules.  Danielle subsequently died in a car accident in Florida.

23.     Counterclaim-plaintiff travelled with his wife Marnie and Counterclaim-

defendant's siblings to visit Counterclaim-defendant in New Hampshire on one occasion for Family Week.

24.     When Counterclaim-defendant turned 18 in 2013, she checked herself out of Sovereign Journey and moved in with her grandparents.

25.     Most of Counterclaim-defendant's contact with her parents after that point was regarding medical bills she needed paid or other requests for financial assistance; she currently works as a sex worker.

26.     In August 2014, Counterclaim-plaintiff and Counterclaim-defendant's mother Marnie separated, and then divorced.

27.     After her parents separated, Counterclaim-defendant became very bitter and hateful toward her father, Counterclaim-plaintiff.

28.     Since August 2014, Counterclaim-plaintiff has seen Counterclaim-defendant on one occasion, after he had separated from Counterclaim-defendant's mother and was picking up their son for a visit.  Counterclaim-defendant came out into the yard and called the police to make false allegations that Counterclaim-plaintiff was violating a protective order.

29.     On or about October 8, 2015, when Counterclaim-defendant was 20 years old, and about nine months after her last contact with Counterclaim-plaintiff, she filed an Ex Parte Petition for Protection from Abuse in Cumberland County, PA.  In this petition, Counterclaim-defendant made multiple false accusations of abuse and sexual abuse against Counterclaim-plaintiff.

30.     As a result, an Ex Parte Temporary Protection from Abuse Order was entered and

an evidentiary hearing scheduled.  Counterclaim-defendant ultimately withdrew her petition and the Temporary Order was dismissed.

31.     Counterclaim-defendant has repeatedly made false accusations of abuse against Counterclaim-plaintiff both orally and in writing to family, acquaintances, and authorities, and to the public at large on social media, a blog, and other online platforms.

32.     On July 4, 2016, Counter-claim defendant threatened Counterclaim-plaintiff with public humiliation.

33.     That day, after being notified that her parents' divorce was final, Counterclaim-defendant sent a defamatory email to the law firm where Counterclaim-plaintiff is employed. The email contained false information and allegations, admonished the firm for employing Counterclaim-plaintiff, and was clearly intended to interfere with Counterclaim-plaintiff's job and career.

34.     As a result of Counterclaim-defendant's actions, Counterclaim-plaintiff has experienced severe damage to his professional and personal reputation and relationships, potential loss of earnings and business clients, physical stress to his heart, and emotional distress and anxiety.

35.     The allegations of abuse in Counterclaim-defendant's Complaints are unequivocally false.

36.     The allegations of abuse that Counterclaim-defendant has repeatedly made orally and in writing are unequivocally false.

37.     Counterclaim-defendant knows her allegations are false.

38.     Counterclaim-plaintiff has expressed and shown his concern, parental devotion, and parental love of Counterclaim-defendant throughout her life.

39.     Counterclaim-plaintiff has always loved, and despite her actions will always love, his daughter, and would never abuse her.

40.     Counterclaim-plaintiff sacrificed and worked tirelessly in an effort to provide for Counterclaim-defendant, and ensure that she had all she needed to keep her healthy, safe, and happy.

41.     Despite being armed with this knowledge, Counterclaim-defendant has chosen to repeatedly make and publish false allegations of the most heinous nature against her own father, Counterclaim-plaintiff, thereby causing him severe emotional and physical distress, pecuniary loss, and damage to his professional and personal relationships.

42.     Counterclaim-defendant's actions appear to be motivated by a desire for vengeance against her father for divorcing her mother and a desire to convince others she has the personal history necessary to be the outspoken "advocate" for abuse victims that she currently proclaims herself to be, despite the blatant falseness of her underlying claims.

### FIRST CAUSE OF ACTION
**(Defamation and Defamation Per Se)**

43.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

44.     Counterclaim-defendant published both orally and in writing, false statements concerning Counterclaim-plaintiff.

45.     The false statements were not subject to privilege and were published by

Counterclaim-defendant with the intent to harm Counterclaim-plaintiff.

46.     Counterclaim-plaintiff intentionally made the defamatory statements knowing them to be false or acted in reckless disregard as to their falsity.

47.     Because Counterclaim-defendant's statements included allegations of criminal conduct, unchastity, and conduct incompatible with the exercise of a lawful business, Counterclaim-defendant's statements constitute defamation per se.

48.     As a result of Counterclaim-defendant's defamation, Counterclaim-plaintiff has suffered special and general damages including potential loss of earnings and business clients, damage to his professional and personal reputation and relationships, attorneys' fees, and severe emotional and physical distress and anxiety.

49.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiff's rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Existing and Prospective Economic Relations)

50.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

51.     Counterclaim-plaintiff worked diligently to establish a good business reputation, career, relationships, and client base.

52.     Counterclaim-defendant knew of Counterclaim-plaintiff's existing and prospective economic relations and intentionally interfered with them by, among other actions,

repeatedly publishing false and injurious information regarding Counterclaim-plaintiff to the public at large and to Counterclaim-plaintiff's law firm, as set forth above.

53.     Counterclaim-defendant's interference was accomplished through improper means, including (but not limited to) defamation, presenting Counterclaim-plaintiff in a false light, abuse of process, wrongful use of civil proceedings, misrepresentation, and deceit.

54.     As a direct and proximate result of Counterclaim-defendant's wrongful interference with Counterclaim-plaintiff's existing and prospective economic relationships, Counterclaim-plaintiff has been damaged in an amount to be determined at trial.

55.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**(Invasion of Privacy (False Light))**

56.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

57.     Counterclaim-defendant has repeatedly publicized her false allegations against Counterclaim-plaintiff.

58.     Given the nature of her accusations against her own father, the false light in which Counterclaim-plaintiff has been placed would be highly offensive to a reasonable person.

59.     Counterclaim-defendant knew of or acted in reckless disregard as to the falsity of her allegations and the false light in which Counterclaim-plaintiff would be placed.

60.     As a direct and proximate result of Counterclaim-defendant placing Counterclaim-plaintiff in a false light, Counterclaim-plaintiff has been damaged in an amount to be determined at trial.

61.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

62.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

63.     Counterclaim-defendant's conduct, including but not limited to repeatedly making and publishing false and heinous accusations regarding Counterclaim-plaintiff to the public and Counterclaim-plaintiff's law firm, and making and filing false and slanderous claims and actions against Counterclaim-plaintiff was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

64.     Counterclaim-defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress to Counterclaim-plaintiff.

65.     As a proximate result of Counterclaim-defendant's conduct, Counterclaim-plaintiff has suffered severe emotional distress.

66.     As a direct and proximate result of Counterclaim-defendant's intentional infliction of emotional distress, Counterclaim-plaintiff has been damaged in an amount to be

determined at trial.

67.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION
**(Negligent Infliction of Emotional Distress)**

68.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

69.     Through the conduct set forth above, Counterclaim-defendant negligently caused Counterclaim-plaintiff to suffer emotional distress.

70.     Counterclaim-defendant knew or should have realized that her conduct involved an unreasonable risk of causing emotional distress to Counterclaim-plaintiff.

71.     Given her knowledge of the surrounding facts, Counterclaim-defendant should have realized that the emotional distress, if it were caused, might result in illness or bodily harm.

72.     The emotional distress suffered by Counterclaim-plaintiff has resulted in physical stress and anxiety, including exacerbating his heart condition.

73.     As a direct and proximate result of Counterclaim-defendant's negligent infliction of emotional distress, Counterclaim-plaintiff has been damaged in an amount to be determined at trial.

74.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-

plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Abuse of Process)

75.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

76.     Given the falsity of Counterclaim-defendant's allegations, she is not using legal proceedings for their designed purpose, which is to provide relief and/or compensation to an actual victim in need of such relief.

77.     Instead, Counterclaim-defendant intentionally and maliciously filed the instant action, and her previous false Petition Protection from Abuse in Pennsylvania, with the primary purpose of harming, harassing, and embarrassing Counterclaim-plaintiff.

78.     As a direct and proximate result of Counterclaim-defendant's abuse of process, Counterclaim-plaintiff has been damaged in an amount to be determined at trial.

79.     Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Wrongful Use of Civil Proceedings)

80.     Counterclaim-plaintiff re-alleges the foregoing allegations as if fully stated herein.

81.     Counterclaim-defendant has brought this action, and her Petition for Protection from Abuse in Pennsylvania, without probable cause, as she knew her allegations were false.

82.    Counterclaim-defendant's purpose is not to secure a proper adjudication of valid claims, but rather to embarrass, harass, and annoy Counterclaim-plaintiff.

83.    The Petition for Protection from Abuse proceedings have terminated in favor of Counterclaim-plaintiff and thus Counterclaim-plaintiff is entitled to relief in an amount to be determined at trial.

84.    Once the instant action terminates in favor of Counterclaim-plaintiff, he will be entitled to additional relief in an amount to be determined at trial.

85.    Additionally, Counterclaim-defendant's conduct was willful and malicious and/or manifested a knowing and reckless indifference toward, and a disregard of, Counterclaim-plaintiffs' rights, and therefore Counterclaim-plaintiff is entitled to an award of punitive damages.

WHEREFORE, Counterclaim-plaintiff Narciso Alejandro Rodriguez-Cayro prays for judgment as follows:

A.    On the First Cause of Action, for judgment against Counterclaim-defendant in an amount to be determined at trial;

B.    On the Second Cause of Action, for judgment against Counterclaim-defendant in an amount to be determined at trial;

C.    On the Third Cause of Action, for judgment against Counterclaim-defendant in an amount to be determined at trial;

D.    On the Fourth Cause of Action, for judgment against Counterclaim-defendant in an amount to be determined at trial;

E.       On the Fifth Cause of Action, for judgment against Counterclaim-defendant in an

amount to be determined at trial;

F.       On the Sixth Cause of Action, for judgment against Counterclaim-defendant in an

amount to be determined at trial;

G.       On the Seventh Cause of Action, for judgment against Counterclaim-defendant in

an amount to be determined at trial;

H.       All other relief which this Court deems just and proper.

## THIRD-PARTY COMPLAINT

Pursuant to Fed. R. Civ. P. 14, Defendant/Counterclaim-plaintiff/Third-party Plaintiff

Narciso Alejandro Rodriguez-Cayro hereby asserts his Third-party complaint against Third-party

Defendant Marnie Lynn Antonik as follows:

## PARTIES

1.       Defendant and Third-party Plaintiff Narciso Alejandro Rodriguez-Cayro is a

resident of the State of Pennsylvania.

2.       Third-party Defendant Marnie Lynn Antonik is a resident of the State of

Pennsylvania.  Third-party Defendant is the mother of Plaintiff Kyli Rodriguez-Cayro

("Plaintiff"), and the former wife of Third-party Plaintiff.

## GENERAL ALLEGATIONS

3.       Third-party Plaintiff re-alleges the allegations contained in his above

counterclaim as if fully stated herein.

4.       Third-party Plaintiff and Third-party Defendant were married and lived together

during the time Plaintiff's alleged abuse occurred.  Third-party Defendant would have been present for, and witness to, the abuse that Plaintiff alleges she suffered.

5.      Third-party Defendant was present when Third-party Plaintiff visited Plaintiff during Family Week at La Europa Academy in Utah, during which time Plaintiff alleges she was abused.

6.      Third-party Defendant was also present when Third-party Plaintiff visited Plaintiff at Sovereign Journey in New Hampshire, where Plaintiff also alleges she was abused.

7.      If Plaintiff's allegations are to be believed (which they are not), then Third-party Defendant witnessed the repeated abuse, but took no action to stop it or protect Plaintiff.

8.       If Plaintiff's allegations are to be believed (which they are not), then Third-party Defendant knew of, yet failed to report to authorities, this repeated abuse.

9.      Given that Third-party Defendant apparently stood by and watched her child be allegedly abused repeatedly, she contributed to, and is partially at fault for, Plaintiff's alleged injuries and damages.

## FIRST CAUSE OF ACTION
### (Apportionment)

10.      Third-party Plaintiff re-alleges the foregoing allegations as if fully stated herein.

11.      By failing to protect Plaintiff, prevent and/or report the alleged abuse set forth by Plaintiff, Third-party Defendant contributed to any and all alleged injuries for which Plaintiff seeks recovery.

12.      Therefore, any damages awarded to Plaintiff should be apportioned between

Third-party Defendant and Third-party Plaintiff based on their respective proportions of fault.

13.     As a direct and proximate result of Third-party Defendant's conduct, she is liable to Third-party Plaintiff for her portion of fault in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Failure to Protect and/or Report)**

14.     Third-party Plaintiff re-alleges the foregoing allegations as if fully stated herein.

15.     As the mother of Plaintiff, who was a minor child at the time of the alleged abuse, Third-party Defendant had a duty to protect Plaintiff.

16.     Additionally, because Third-party Defendant would have been witness to the alleged abuse, Third-party Defendant would also have had a duty to report the alleged abuse to the authorities and to prevent further abuse.

17.     Because Third-party Defendant did not protect Plaintiff from the alleged abuse and/or report or attempt to prevent future abuse, Third party Defendant is jointly liable for the alleged abuse.

WHEREFORE, Third-party Plaintiff Narciso Alejandro Rodriguez-Cayro prays for judgment as follows:

A.     On the First Cause of Action, for contribution from Third-party Defendant in an amount to be determined at trial;

B.     On the Second Cause of Action, for contribution from Third-party Defendant in an amount to be determined at trial;

C.     Any other relief that the Court deems just and proper.

DATED this 22nd day of November 2017.

MICHAEL BEST & FRIEDRICH, LLP


/s/      Melinda A. Morgan
*Attorneys for Defendant*
*Narciso Alejandro Rodriguez-Cayro*

## **CERTIFICATE OF SERVICE**

THE UNDERSIGNED CERTIFIES that on this 22nd day of November, 2017, a true and correct copy of the foregoing was filed with the Court via CM/ECF and therefore served upon all counsel of record via ECF Notification.

/s/  Kevin A. Richardson